George W. Cutting v. Commissioner. Estate of Mary C. Cutting, Deceased, George W. Cutting, Executor v. Commissioner. Estate of Mary C. Cutting, Deceased, George W. Cutting, Executor, and George W. Cutting, Surviving Husband v. Commissioner.
George W. Cutting v. Commissioner
Docket Nos. 12682, 111970, 111971.
United States Tax Court
1947 Tax Ct. Memo LEXIS 18; 6 T.C.M. (CCH) 1326; T.C.M. (RIA) 47327; December 18, 1947
William D. Morrison, C.P.A., 825 Bank of America Bldg., San Diego, Calif., for the petitioners. Byron M. Coon, Esq., for the respondent. KERN Memorandum Findings of Fact and Opinion These consolidated proceedings involve deficiencies in income and victory tax determined by respondent as follows: Deficiency
Docket
Income
Income and
Petitioner
No.
Year
tax
Victory tax
George W. Cutting
12682
1941
$5,976.91
1943
$5,938.12
1944
6,218.11
Est. of Mary C. Cutting, deceased, George W. Cutting,
Executor
111970
1940
959.77
Est. of Mary C. Cutting, deceased, George W. Cutting,
as Executor and Surviving Husband
111971
1939
920.31
Three issues are presented for decision in these proceedings: (1) whether losses from the operation *19 of a farm in Virginia are deductible as business expenses, (2) whether amounts claimed as losses in connection with a ranch in Colorado are deductible as business expenses, and (3) whether office expenses paid by petitioner, George W. Cutting, are deductible as business expenses. Other issues were raised by the pleadings with regard to other adjustments made by respondent in petitioners' taxable income incident to the determination of the deficiencies here involved, but were conceded by respondent at the hearing here involved, but were conceded by respondent at the hearing herein. Effect will be given to these concessions in the recomputation under Rule 50. George W. Cutting, as the executor of the Estate of Mary C. Cutting and as an individual and surviving husband, will hereinafter be referred to as the petitioner. Findings of Fact Petitioner is an individual residing at Warrenton, Virginia. He is also executor of the Estate of Mary C. Cutting, his wife, who died a resident of Warrenton, Virginia, on November 4, 1940. Petitioner and his wife, Mary C. Cutting, filed joint returns for the year 1939. Petitioner filed an individual return for Mary C. Cutting for the period January 1, 1940 to *20 November 4, 1940, the date of her death. He filed individual returns for the years 1941, 1942, 1943 and 1944. These returns were filed with the collector of internal revenue for the district of Virginia. Petitioner was born on a ranch in Colorado, and as a young man worked in the mines and later engaged in a prosperous real estate business in Denver, Colorado. He served in the Army during the first World War and thereafter held a Reserve Corps commission in the cavalry. In 1925 petitioner married his first wife, Mary C. Cutting, who was a widow with three children. After their marriage they lived in Denver. Mary C. Cutting had a considerable income from a trust fund established by her father. Shortly after petitioner's marriage one of the children of Mrs. Cutting died and petitioner moved his family to California where they lived for approximately three years. Petitioner, during this time, returned to his work in Colorado but made frequent visits to his family in California. During this period petitioner and his wife acquired a desire to live in the country and run a farm. They looked over California for a prospective site, but found none suitable for their purpose. In a short time *21 the first child of petitioner and his wife died and during the readjustment period they again acquired the desire to operate a farm. In 1929 they drove East with the purpose, among other things, of looking over various parts of the United States for prospective farm sites. After looking over various parts of the country they decided that they would like to live somewhere in the Piedmont section of Virginia and engage in the business of raising and selling purebred livestock, particularly the raising and breeding of Aberdeen Angus cattle. In July or August of 1933 they leased the house on a farm near Warrenton, Va., known as the Fenton Farm with the purpose of taking a year to look over the adjacent country in order to decide on a specific location suitable for cattle raising. Other factors involved in the selection of a farm were adequate and pleasant facilities for living, proper schools and medical attention for the family, and a location within reasonable proximity to Boston where Mrs. Cutting's family lived. At that time petitioner's household consisted of himself, his wife and five children. They looked over the country from Charlottesville to Leesburg, Va., and in 1934 purchased *22 the Fenton Farm consisting of 490 acres for $60,000. In 1941 an additional 26 acres were purchased for $2,100 to provide an outlet to the highway for the upper end of the farm. Petitioner's primary purpose in purchasing this farm was to engage in the business of farming, cattle raising, and the development of a herd of purebred Aberdeen Angus cattle for profit. The buildings on Fenton Farm consisted during the taxable years of dwelling houses, two tenant houses and various farm buildings. The main dwelling consisted of a story and a half dormer type of field stone construction, with slate roof, copper guttering, six master bedrooms and four baths, servants' quarters and bath, kitchen, pantry, scullery, living room and library. The two tenant houses were six-room stucco structures with electricity and plumbing. These were built subsequent to the acquisition of the farm in 1934 but prior to the taxable years. There was a stable on the farm with twelve stalls, a main barn 30 X 60 X 70 feet with horse stalls and stanchions for milk cows; a feed room with hammer mill. There were two 160-ton silos adjacent to the main barn and feed shed, two corn cribs approximately 20 X 20 and 10 X 10 *23 feet, a machine shed, sheep sheds, two small hog houses, chicken houses, a turkey house, a pump house that houses the electric pump and two wells. The pastures were provided with small lean-tos for shelter for the cattle in wet winter weather. The land during the taxable years consisted of a total of 516 acres, of which 430 acres were agricultural lands, including pasture land and hay fields, and the remainder woodland. The petitioner's farm machinery consisted of a farm tractor, plows, cultivators, drills and harrows, a binder and manure spreader. There were also three teams of work horses. Petitioner's farm employees consisted of a foreman or farm manager who directed the farm labor, a herdsman and ordinarily two additional men on the farm all the time who fed steers, repaired and built fences, took care of the land, livestock and work houses. Extra help was employed for the busy periods such as seeding, plowing, harvesting and filling silos. None of these employees did any of the gardening or lawn work around the house which was taken care of by the domestic help. Besides the farm help above mentioned there were two men who took care of the milk cows and the gardens. The household *24 help consisted of a combination chauffeurbutler, a cook, a downstairs maid, an upstairs maid, and a governess for the small children. Petitioner kept a complete set of books reflecting all phases of his farming operations and books reflecting his personal accounts. All of the compensation paid to this domestic help, including the two men who took care of the milk cows and the gardens were charged to petitioner's personal household account and not to the farm operations. The farm foreman lived in one tenant house with his family and the gardener and his family lived in the other. The resident employess consisted of the foreman, the gardener and the governess. None of the other employees lived on the place. Approximately 45 to 50 acres of the Fenton Farm were planted by petitioner each year with corn so as to fill the silos with ensilage. Other crops grown were wheat barley, orchard grass, timothy and clover. Crops were carefully rotated. Not all the feed required for petitioner's cattle and horses was grown on the farm and additional feed was purchased for this purpose. Petitioner devoted approximately 85 or 90 per cent of his time to the farm operations except during the period *25 September 29, 1941, to May 8, 1946, when he was with the armed forces of the United States. He assisted in the various farm activities, including haying, driving a grain drill, corn cultivator, binder and such activities, but after the first year he performed physical labor only in times of emergency such as at seeding and harvest time. He frequently consulted with his county agricultural agent and some of the neighboring farmers with regard to some of his agricultural problems. Petitioner acquired a herd of purebred Aberdeen Angus cattle shortly after he bought the Fenton Farm, which he developed and built up until 1942 pursuant to his plan above referred to of raising and selling for profit purebred cattle. Petitioner entered the armed forces of the United States on September 29, 1941, and shortly afterwards his herdsman decided to join the Navy. No one was left on the farm who could properly care for the purebred herd. As a result of these unforeseen developments petitioner was forced to dispose of this herd in 1942. In addition to the thoroughbred cattle, petitioner also purchased feeder steers for sale. They were purchased in the spring as light weight steers. grazed all summer *26 and in the fall were placed in a feed lot where they were fed ensilage supplemented with other feeds such as cottonseed meal, oats, ground corn, so as to fatten them up and prepare them for market. During 1944 he suffered a loss of $6,864.70 on the sale of such steers. Petitioner also kept on the farm from five to seven milk cows, and the same number of pigs. The pigs were marketed each year, and the milk was used for consumption on the place. Some 10 or 12 sheep were also kept on the premises but were discontinued as they were killed by the dogs. He also kept from three to eight saddle horses, including ponies for the children and a burro. There were also from 50 to 75 chickens and 25 to 30 turkeys on the place. None of the poultry or turkeys was sold but the turkeys were given away as Christmas presents. The feed that was fed to the saddle horses, cows, chickens and turkeys was kept in separate bins and the cost of maintaining them was charged to petitioner's personal account as distinguished from his farm account. The gross profits, expenses and depreciation and losses incurred in the operation of Fenton Farm were as follows: Farm Ex-
penses and
Gross
Farm
Year
Depreciation
Profits
Losses
1939
$ 9,059.03
$ 1,319.82
$ 7,739.21
1940
11,752.52
1,961.79
9,790.73
1941
12,936.15
3,808.48
9,127.67
1942
19,524.17
13,140.85
6,383.32
1943
18,300.55
8,008.77
10,291.78
1944
13,319.78
(4,652.94)
17,972.72
$84,892.20
$23,586.77
$61,305.43
*27 Sweetwater Ranch was acquired by Mrs. Mary C. Cutting in 1922 at a cost of about $45,000 prior to her marriage to petitioner. Petitioner did not know the reason for its acquisition. It was located near Gypsum, Eagle County, Colo., approximately 180 miles west of Denver. It comprised approximately 900 acres of which about 125 to 150 acres were hay and grazing land. There was a main dwelling, consisting of nine rooms, of frame-stucco construction and a four-room tenant house. There was also a barn which took care of the work horses and cattle, a feed shed, a small hog house and chicken house. The land was hilly and rocky and except for the 125 to 150-acre tract, above referred to, was too rocky for cultivation. Petitioner never lived on the place and did not devote much time thereto. Petitioner's parents lived on Sweetwater Ranch until the death of the father in 1942. The mother then went to live with her son at Fenton Farm, and the ranch was sold shortly thereafter. The loss on the operation of Sweetwater Ranch in 1939 was $1,873.24 and in 1940 $4,057.75, or a total of $5,930.99. In 1939 the total receipts from the ranch amounted to $85 representing the sales price of eggs and *28 a horse. In 1940 the total receipts from the ranch amounted to $250 representing the sale price of hay. At the times that petitioner was not engaged in farming operations he was engaged in the real estate business in Warrenton, Va. In connection with this business and the operation of the Fenton Farm he incurred expenses for office rent, postage, stationery and supplies, and other miscellaneous items in the amount of $3,532.59 for the calendar year 1943 and $2,937.13 for the calendar year 1944. Approximately 60 to 75 per cent of these office expenses were attributable to his farm operations in Virginia. Petitioner was on the Board of Trustees of the Virginia Aberdeen-Angus Association from 1936 to 1942 and was president of the association in 1937. Petitioner was also one of the organizers of the Northern Virginia Land Owners Association which was an organization that was built up of owners of farm property in Loudoun and Fauquier Counties to help promote a better agricultural policy throughout the two counties, to assist in the road situation, and other things of community interest. Prior to 1940 petitioner rode occasionally with the Warrenton hounds to which he subscribed. *29 At the time the Fenton Farm was purchased and at all times during the taxable years the petitioner believed in good faith that it would become profitable. During the years 1939 to and including 1944 the petitioner operated Fenton Farm as a business undertaking and with the intention of making a profit therefrom, and the expenses incurred therein are ordinary and necessary expenses. Opinion KERN, Judge: The principal questions here involved are whether the losses incurred in the operation of the Fenton Farm and in connection with the Sweetwater Ranch were incurred in the operation of business enterprises entered into and conducted for the purpose of making a profit. As to the Sweetwater Ranch, we are of the opinion and so hold that the evidence adduced by the petitioner is not sufficient to justify a conclusion that the farming operations conducted thereon constituted the operation of a business enterprise entered and conducted for the purpose of making a profit. The purpose of its acquisition was not shown; the sales of produce therefrom during the two taxable years in which it is involved in these proceedings were insignificant; we have no evidence as to the farming or ranching *30 operations carried on in connection with it, or how a profit was expected to be realized; and the ranch was sold shortly after it ceased to be occupied as a home by petitioner's parents. On this issue we decide in favor of respondent. As to the Fenton Farm we have concluded differently and decide this issue in favor of petitioner. Such a conclusion and decision is required by the evidentiary facts outlined in our findings, and the law as stated in the many cases decide in this field of taxation, a large number of which are cited and digested in Mertens, Law of Federal Income Taxation, §§ 28.72, 28.73. Respondent's brief filed herein is remarkable for its persuasive reasoning and felicity of expression, but the authorities upon which he relies are, in our opinion, not applicable to the facts of the instant proceedings. The principal case discussed in his brief is . There the salient fact was that the small farm owned and operated by the taxpayers was intended to produce good food for the consumption of the taxpayers and any sales were merely resulting incidents to the disposition of a minor surplus. The other cases cited: , *31 aff'd. ; , aff'd. ; and R. T. Glassel, aff'd. ; have factual backgrounds which differ in such material respects from the instant case that they are not helpful in a consideration of the issue here presented. Petitioner, in his brief, cites and discusses some seventeen published cases as well as several unpublished opinions. It would not be profitable to analyze them or comment upon them in detail in this opinion. The facts involved are necessarily different in each case. However, they are sufficiently analogous to the instant proceedings to make the rule recognized in those cases applicable here. See ; ; ; ; ; ; ; . The fact that petitioner anticipated pleasure as *32 well as profit from his agricultural venture does not, of itself, prevent such a venture from being considered a business or preclude the deduction of losses arising therefrom. See ; . The issue involving the deduction of expenses paid by petitioner in connection with his office in Warrenton, Virginia, must also be decided in favor of petitioner. In so far as these expenses were incident to petitioner's real estate business respondent does not question their deductibility. His contention on this issue is that the part of these expenses relating to the farm operation is not deductible since the farm operations did not, according to his argument, constitute a business. Since we have held that the operation of the Virginia farm did constitute a business, it follows that the office expenses of petitioner are properly deductible. Decision will be entered under Rule 50.